Bissell, J.
This case dragged its slow, wearisome way along, resulting in matter filling upwards of 300 pages of a printed abstract. We have dragged our wearisome way through this mass of stuff in the attempt to ascertain whether the court committed an error in stating at the conclusion that the plaintiff failed to sustain his complaint. Practically, the only vital question in the case is one of naked fact. A good many errors are assigned by the appellant respecting the introduction of testimony, and while we shall devote a. little attention to those minor assignments before the opinion is concluded, as we have suggested there is but one question. We are quite ready to concede that the great bulk of what is called the defendant’s testimony is nothing but a rambling quasi sort of a legal argument, rather than a narrative of facts within the defendant’s knowledge. Eliminating all this immaterial matter which comprises the bulk of the testimony, there yet *517 remains a denial of what the plaintiff alleged to he the agreement 'between him and the defendant. While we do not intend to quarrel with the appellant’s counsel because of their attempt to show, in which they perhaps measurably succeed, a failure on the part of the defendant to do the fair and reasonably equitable thing, still this consideration cannot affect the result.
A general statement of the situation is enough for the purposes of the decision. In 1886 or 1887 one William J. Wood appears to have been the owner of an interest in the Emma mine in Aspen which turned out to be of material value. He died owning this interest. Thereafter this title vested in his heirs but apparently passed by sundry conveyances and proceedings in court to other individuals and to a mining company. Casserleigh was a private detective. He had an engagement with a man who afterwards died which contemplated the procurement of information respecting the citizenship of the deceased owner. His labors were more or less successful and he also found a good many of the heirs. Casserleigh had a good deal of information of more or less value to support the title of the decedent Wood. He then made a contract with several of those heirs who were sons of the deceased, and possibly with one of his daughters whereby he was to receive two thirds of whatever they should recover, he procuring a lawyer and paying the expenses of the litigation. After he had obtained these contracts and while he had them in his possession, he went to the defendant Green to employ him under those contracts to begin the requisite suits to establish and maintain the title. This was in July, 1887, and just shortly before the statute of limitations would have run against the action. Up to this time Green had neither knowledge of the situation nor of the interest of the parties, and his first employment came from Casserleigh who at his request and to make a contract between them, assigned a one-half interest in these contracts which was to be the measure of Green’s compensation and for which Green undertook to begin and carry on the suits to a successful termination. This much *518 is suggested because a great deal of testimony is given bjr Green to the point that the contracts were worthless, that he knew they were worthless, told Casserleigh so, but notwithstanding this, and having no other retainer or employment, he prepared a bill and commenced suit to recover the Wood interest. We do not intend to discuss the question whether the contracts were good or bad because the matter is not involved. Mrs. Billings who was the wife of the. decedent was made a party to the bill whereby her rights were saved under the statute, although neither Casserleigh nor Green had any contract with her or any agreement with anybody else on her behalf when the suit was begun. It appears that prior to this date Casserleigh had been negotiating with Mrs. Billings with reference to a contract and had been for some time endeavoring to procure one from her. After the filing of the bill Green did make a contract with her for one third of whatever might be recovered as his compensation. He seems to have ignored the man by whom he was originally employed, and to whose employment he was really indebted for whatever he got out of the case, either then or ultimately, and took the contract from Mrs. Billings for an absolute one third for his personal compensation as an attorney. He testifies that Casserleigh had no interest in this contract, that he did not intend to give him any but intended to ignore him, and that although he knew Casserleigh was endeavoring to procure the contract he gave him no information of what he was doing or what he had done, and it was practically concealed from Casserleigh until the termination of the litigation. About the good faith of this transaction we have nothing to say because it is unimportant whether Green dealt fairly with his original employer or unfairly, the only question being whether the circumstances were such as that he, by the terms of his engagement, became obligated to give Casserleigh one half of whatever he might get out of Mrs. Billings, or that he was bound to so contract as to protect Casserleigh’s interest. When this question is resolved in his favor by the trial court, it is the end of this suit regardless of all questions of equita *519 ble and fair dealing. The original suit went to judgment and the Wood heirs recovered. There was a settlement which we need not particularize and therein and therefrom Green seems to have reaped a greater or less reward in the shape of a conveyance to him of sundry interests in a large number of mining claims and a very considerable sum in cash. After the judgment had been settled Casserleigh brought this suit against Green to compel him to account for one half of whatever he got from Mrs. Billings on the theory of an express contract with Green that he was' to receive a one-half interest in whatever contract Green should ultimately make with Mrs. Billings and one half of whatever he should get out of it in fighting for that particular interest in the estate. This was the sharply defined issue of fact presented by the testimony. Thereon the court found with the defendant and against the plaintiff.
A great bulk of the appellant’s argument is made up of a discussion of the relation which exists between attorney and client, the absolute fairness that must prevail, the attorney being inhibited from doing anything contrary to the interests of his client unless he can satisfy the court that it was done advisedly and with full knowledge and full understanding. We have no quarrel with this law which universally prevails. The only trouble is we see no opportunity for its direct application. Green was employed by Casserleigh on the basis of a transfer by Casserleigh to Green of a one-half interest in the contracts which Casserleigh then had. It is not an open question as' to the nonexistence of any contract with Mrs. Billings at this time. Concededly neither party had made any agreement with her, nor had any contract with her about the recovery of her interest or what should be paid therefor, and there is no evidence to show, or at least if there is, the court found the other way and with Green, that at this time Casserleigh and Green agreed that Casserleigh should share in whatever contract Green might thereafter be able to make with her. In fact from Casserleigh’s own testimony we are wholly unable to find any evidence on which we can *520 predicate a conclusion that at the time of the employment or thereafter Green and Casserleigh made an agreement in regard to a division of whatever Green should receive in prosecuting the suit for the Billings’s interest. It may seem a little strange that when Casserleigh’s employment was the only thing which got Green into the case he should attempt to contract with Mrs. Billings without making any provision for Casserleigh, and should thereafter refuse to divide with Casserleigh whatever he received therefrom. But this doubtless he had a right to do unless there is some legal obligation resting on him enforceable in law as the result of an express or implied contract about it. We are unable to find either which would bind Green. The court found that way and we are not inclined to disagree with it. There is no express contract and there is a very clear failure on the part of the plaintiff to prove one, and we are unable to see in the terms of the original hiring any circumstance or condition from which the law would imply a contract by Green to account to Casserleigh for any part of whatever he might ultimately receive from Mrs. Billings. This is all we intend to say about the case as it stands on the facts. It disposes of the case and the remaining assignments of error are scarcely worthy of special discussion, nor do we believe they are sufficient to entitle the appellant to a reversal although some of them may be well laid. All these errors relate, as we have suggested, solely to the receipt of testimony which was incompetent under the issues made by the pleadings and immaterial thereto. We do not regard this question as of great gravity or one of sufficient importance to justify a reversal even though we should agree with appellant’s counsel. The case was tried to the court. There was no jury to be influenced by the introduction of this testimony, the court itself could not have been influenced by it, and if it was, if it had any weight with it at all, it did not bear on the main issue which was contract or no contract as to the Billings’s interest. When counsel complain that on cross-examination the defendant was permitted to ask questions concerning matters not covered by the ex- *521 animation in chief, the inutility of the assignment of errors for the purposes of reversal is demonstrated by the statement that the cause was tried to the court and no harm could have come to the appellant.
The appellant complains because Casserleigh’s affidavit which was filed in the original suit begun in the federal court was not received in evidence. We are quite unable to appreciate the force of the argument or to see the significance of this affidavit. It undoubtedly showed what Casserleigh claimed at the time, and showed his connection with the original suit, and perhaps in a limited fashion exhibited Green’s reliance on Casserleigh’s statements and the value of his testimony or the information which he was able to furnish. All this, however, is beside the question when it comes to the determination of whether or not Casserleigh had a contract with Mrs. Billings, or having no contract with her he had such a contract with Green with reference to the Billings interest as would enable him to maintain the suit. It is a harmless error. The same argument is applicable to the error assigned respecting Early’s testimony. It appears that T. G. Early had some connection with the case at one time in its early inception. In some way he dropped out of the original employment, if there was one, and whether there was or not is unimportant, and afterwards when Casserleigh was about to begin a suit against Green to compel him to account for what had been received Early was apparently employed by Casserleigh to look after his interests. At least there is a contract between him and Early exhibited in the record. We have not examined it and care very little as to what there is in it, and are unable to see its significance or importance, -but it is simply stated to show the relation between the parties. Early was called by Green as a witness, and he seems to have been quite ready to testify against Casserleigh and Casserleigh’s claims. He gave testimony concerning sundry and divers declarations made by Casserleigh in regard to Green’s being let out of the suit, and gave some collateral evidence which possibly might have a little bear *522 ing as illustrative of Casserleigh’s relations to the suit and to Green. It was insisted that Early was an attorney for Casserleigh and therefore incompetent under the statute to testify. As we look at it, the evidence does not disclose the existence of the relation of attorney and client at the time these declarations were made concerning which Early testifies, or if it must be conceded that the contract was in force at the time, it does not appear that these declarations or statements were made by Casserleigh to Early as an attorney, or for the purpose of procuring his advice about it, and we are unable to hold that his testimony should have been excluded because of the relation. However this may be, we regard its admission as an unimportant and immaterial error which may not disturb the judgment. The character of Early’s testimony is not such as would give it much weight with the court, nor can we discover that anything that he testified to could in any wise have influenced the court’s judgment, because it still remains true that the plaintiff’s own testimony, negatived as it is by the defendant’s, gave the court the right to conclude that there was no contract between these parties as to the Billings interest and the plaintiff’s bill should therefore be dismissed. We deem it wholly unnecessary to give any further attention to this assignment of error.
We regard these suggestions as a sufficient disposition of the various assignments of error on which the appellant relies and we do not think it our duty to go through and analyze each 02ie of the errors assigned and state our opinion about them. They are some fifteen or sixteen in number, but they all rest on the same common foundation. This foundation is that the court erred in admitting immaterial testimony which was incompetent under the issues, the introduction of papers which ought not to have been permitted in evidence, error committed by the court in regard to the order in which the testimony was introduced, and permitting the introduction of testimony on the conclusion of the plaintiff’s case and at the wrong point in the history of the case. As we have already suggested no one of them nor all of them together, *523 conceding that they were all erroneous, and that the court erred sixteen times as the appellant’s counsel claim, can disturb the judgment. We are not permitted, even though tins enormous bundle of errors was committed, to reverse the ease. Substantial justice has apparently been done between the parties when once it is conceded that the plaintiff failed to prove a contract in respect to the Billings interest on which he had a right to recover from Green. The court so concluded or it could not have rendered the judgment which it did. This conclusion is supported by evidence in the record sufficient to warrant it, and whatever might be our convictions about it from reading it over in cold type, there is nothing which exhibits either bias or prejudice, which can or under any known rule justify us in disturbing the court’s conclusion. The case having been tried to the court the significance and importance of most of the errors discussed wholly disappear.
We are unable to discover any error in the record which warrants us to disturb the judgment, and it tvill accordingly be affirmed.

Affirmed.